Filed 7/18/13  In re Karen J. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re KAREN J. et al., Persons Coming Under the Juvenile Court Law. | B245691<br>(Los Angeles County<br>Super. Ct. No. CK95070) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SALVADOR J.,<br><br>    Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Marguerite D. Downing, Judge.  Affirmed as modified.

Maureen L. Keaney, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Navid Nakhjavani, Deputy County Counsel, for Plaintiff and Respondent.

Father Salvador J. (father) appeals the dependency court's jurisdictional and dispositional orders regarding his children Karen J. and Salvador J., Jr., contending the

dependency court's findings are not supported by substantial evidence of his ongoing substance abuse, physical abuse of his wife and children, or a substantial risk of harm to the children. We affirm as modified to strike the allegations based on father's marijuana use.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### 1. *Petition and Detention*

Olga H. is the mother of Karen (born 1994) and Salvador, Jr. (born 2004). A petition filed August 17, 2012 alleged counts against father under Welfare and Institutions Code[1] section 300, subdivisions (a), (b), and (j), arising out of his physical abuse of mother, Karen, and Salvador, Jr. on four different occasions. The petition alleged three counts under subdivision (a) based on father's physical abuse of mother on July 21, 2012 and September 11, 2011, father's physical abuse of Karen in December 2011, and father's physical abuse of Salvador, Jr. on numerous unspecified dates (counts a-1 through a-3). The petition alleged four counts under subdivision (b) based upon these same incidents, as well as a count alleging that father had a history of substance abuse including alcohol and marijuana and was a current abuser of those substances (counts b-1 through b-4). The petition alleged two counts under subdivision (j) based on father's physical abuse of Karen and Salvador, Jr. (counts j-1 and j-2).

The detention report stated that on July 26, 2012, DCFS received a referral of ongoing domestic abuse between mother and father consisting of father hitting and pushing mother in front of the children, with the last incident occurring July 21, 2012. Karen told the social worker father had, on one incident, pulled out a gun and then left the scene with the gun. Karen further disclosed that father is a long-time user of cocaine and marijuana and kept drugs in the home and in the garage, and had a group of "drug buddies." About a month before, Karen reported to police that father hit her, leaving bruises, but the police did not do anything because the bruises were not apparent until the

---

[1] All further statutory reference are to the Welfare and Institutions Code unless otherwise indicated.

2

next day.  Father repeatedly told mother "'he doesn't want her there,'" and threatened to throw mother and the children out of the house.

On August 2, 2012, a social worker went to the home, which she observed was a well maintained two-bedroom, one-bath home.  Mother informed the social worker that father slept in one bedroom, and she and the children slept in the other.  Mother stated that she and father had not been sleeping in the same bedroom for about three months.  The social worker did not observe any drug paraphernalia.

Mother confirmed Karen's reports.  She stated that father had hit her in 2000 and again the previous September.  Father attempted to hit Karen about a month ago, but mother did not allow it.  Father often kicks mother out of the home because title is in his name.  Father is verbally abusive to her, but mother "has learned 'to let father be'" and does not talk back to him and tries to remain calm.  In September 2011, father choked mother and held her by the neck, and she defended herself and hit him back.  She obtained a temporary restraining order and they separated for about a month, but she did not obtain a permanent restraining order because she thought the children would suffer.  Mother denied the recent July 2012 incident with father, stating father has redirected his aggression to Karen.

Last month, mother had an argument with Karen which father overheard.  Father told Karen he was going to beat her, and Karen called the police.  Mother told the social worker that in December 2011, father pulled Karen's hair and kicked Salvador, Jr. about two years ago at Easter.  Mother admitted slapping Karen because Karen used to be difficult; however, Karen has been attending church and has calmed down.  Karen was molested in July 2011, and mother believes this has affected Karen and is the reason for Karen's disclosure of the domestic violence in the home.  Karen managed to escape from the man and reported the matter to police.  Further, men broke into the home on July 3, 2012 while Karen was there and put a gun to Karen's head.  Karen was receiving therapy.

Mother denied witnessing father use drugs, but last year a man known to use marijuana and cocaine frequently visited their home to see father.  Mother was not sure

about current drug use because father was rarely home; he would leave for three to four days at a time and would not tell her where he had been. Although she had not witnessed his drug use at home, mother believes father uses because she saw his mouth shake and he does not sleep. Father keeps the garage locked and mother does not know what is inside. Father stopped drinking on May 11, 2012.

Mother stated the domestic violence worsened about two years ago when father injured his back in an accident and obtained $1 million compensation. Father started drinking more often and would leave for long periods of time and used drugs. She does not know how father spent all of the money because he will not tell her. Mother stated father pulled out a gun at Karen's 16th birthday, but it was a "fake" gun and he was drunk at the time. Mother wanted father to leave and she wanted a divorce.

On August 2, 2012, the social worker also met with father at the home. Father had been sleeping when the social worker arrived and woke up during the interview with Karen. Father was upset and told the social worker he would not talk to her and needed to talk to his attorney. The social worker observed that father's hands were shaky. Father denied physical abuse of Karen, and told the social worker to leave him alone.

On August 3, 2012, mother told the social worker she had gone to her sister's house and would stay there temporarily. Mother had gotten the paperwork for a temporary restraining order and stated she would return to get help filling it out at the courthouse.

On August 6, 2012, mother gave the social worker a copy of the temporary restraining order she obtained. Father had called her several times over the weekend but she did not pick up the phone; father left voicemail messages saying "'where the hell are you'" and "'[w]here did you take my kids.'" Mother's declaration in support of her application for a temporary restraining order additionally stated that in September 2011, she asked father why he hit Karen in Las Vegas in the middle of a restaurant in the presence of their friends: father ordered Karen to finish her food and hit Karen across the face. In response to mother's questions about the incident, father yelled at mother and

4

stated, "'I'm fucking tired of this and you! I am sick of you, and I am tired of your fucking ass! I can do with you whatever I want! I am the one that pays the bills and I am the one who decides!'" (Boldface omitted.) Father stated he would yell at the children and hit them whenever he wanted. Father was about to hit mother when he reconsidered, and instead grabbed her by the neck and covered her mouth with his hand. He started to choke her but mother got away. Mother stated that father was very aggressive and lost his temper frequently and became violent. In 1999, father was arrested for domestic violence and ordered to do a batterer intervention program. Mother and father were separated for about a year.

On August 2, 2012, the social worker met with Karen. Karen confirmed the incident on July 21, 2012, and said that father was always telling them he was going to kick them out because they took his money. Father told Karen that if she wanted to leave, she should leave. One time she went to her friend's house, but when she came back the next day father "'got in her face.'" She admitted she used to leave home a lot, but things had changed since she started attending church. Father did not support church attendance because he believed the church "'just takes away your money.'" Karen told the social worker that in December 2011, she came home late and father was angry, demanding to know where she was and tried to grab her arm. Father chased her down the street, grabbed her hair, pushed her down, and started to choke her. Karen was not afraid of father because she could defend herself and "'I know he's the one that's gonna get in trouble.'" The social worker did not observe any marks on Karen.

Karen stated that mother believes father is on drugs, but does not see father using. Karen admitted to her own alcohol and marijuana use in the past, but she no longer uses since she started attending church. Mother tells Karen she thinks father uses cocaine because his eyes pop out and his lips are cracked. Karen saw some marijuana in father's room last year but has not seen anything lately because she has not been inside his room. Several years ago she walked into the garage when father was there with some friends and she saw a large cloud of marijuana smoke. Father keeps the garage locked and Karen

believed he might have drugs in there, but she could not be sure. Father got upset on her birthday because her boyfriend and another friend were there. Father took out a BB gun, pointed it at everyone, and yelled for them to leave.

Salvador, Jr. told the social worker that father usually sounds angry. Salvador, Jr. is afraid of father, who hits Salvador, Jr. on the hand if he misbehaves. He stated that father smoked a lot, and "grabs something white on the sidewalk and in his car." Salvador stated that father choked mother a long time ago.

Alejandro C., mother's cousin, told the social worker that he noticed that father had started to verbally discipline Karen, but he had not witnessed any physical abuse, nor had he seen father use drugs.

At the August 17, 2012 detention hearing, the court ordered the children placed with mother, ordered random drug testing for father, and counseling for the children. The court ordered monitored visitation for father, but mother was not permitted to monitor the visits.

On August 27, 2012, mother obtained a restraining order against father. Mother and the children were living in a confidential location.

2. *Jurisdiction and Disposition*

DCFS's report prepared for the September 18, 2012 jurisdiction hearing stated that Karen remembered an incident of domestic violence between her parents when she was about three years old. She heard an argument between her parents in the bedroom and when she went into the room, she saw blood on mother's face. Father was arrested. Another incident occurred when Karen was four years old and she was at Target hiding from her father because he was hitting mother. Karen denied witnessing father with a BB gun, and stated that at her birthday, she was in her room, and when she came out of her room, one of her friends told her that father had pointed a BB gun at them and asked them to leave. She denied witnessing father abuse Salvador, Jr. She denied that father drank every day, but admitted father would go into the garage and drink and smoke

6

marijuana mainly on weekends. Karen knew he was smoking marijuana because she could smell it. She stated that father knew people who used drugs.

Salvador, Jr. told the social workers that mother and father argued every day and father would yell at mother and hit her. Salvador, Jr. did not see father with a gun. A long time ago, father was going to hit Karen with a belt but Karen hit father and he called the police. Father yelled at him often and made him cry, but Salvador, Jr. denied father hit him. Father drank beer and smoked, and father would often stay in the garage with his friends, but Salvador Jr. did not know what they did in the garage.

Mother reported that her relationship with father had always been turbulent. She noticed a change when Karen began to attend school and mother began to participate in classes the school offered, such as parenting, support groups, and other classes; father did not like her participation in these classes. Father started by being verbally abusive, then he came home drunk and slapped mother. Father was arrested and participated in domestic violence and other programs. Mother had not witnessed father abuse Karen physically, but Karen had told her about it.

Father denied the allegations he choked mother on July 21, 2012, and did not know why false allegations were being made. He admitted the incident in 1999, and asserted he took a plea and attended domestic violence classes. The September 11, 2011 incident was another verbal argument with mother; father stated that mother was going to call the police so he left. Father asserted that Karen was getting out of control and she was no longer listening to mother because Karen was involved with the wrong crowd, using drugs and drinking alcohol. Father admitted getting angry easily and attributed it to his diabetes. He is insulin dependent and on a strict diet. Father denied hitting Salvador, Jr.

Father denied having a current drinking problem, and asserted his last drink was in December 2011. He denied any use of marijuana. Father suffered an injury at work, had surgery, but still suffers pain. Father claimed he last used cocaine six to eight years ago.

7

Andrea G. witnessed the incident when father chased Karen down the street. She did not see father hit Karen, and she did not observe anything else out of ordinary with the children. She did not know if father had a drinking problem. When mother first left home father would get drunk and call Andrea G.'s house at 1:00 a.m. or 2:00 a.m. and demand to know where mother and the children were.

Mother told the social worker she was born and raised in Mexico, and came to the United States in 1990. She is married to father, who is the children's father. Mother has two adult sons aged 27 and 28 who live in Mexico. Mother did not graduate from high school, and mother is not employed and receives aid and food stamps. The first domestic violence incident with father occurred in 1992; as a result, father was incarcerated for assaulting her. She has participated in family counseling with the children, but the services ended.

Father was born and raised in Mexico City, has been in the United States for 23 years, and is working to legalize his residency. All of father's siblings remain in Mexico. Father has a 27-year-old daughter whom he recently met. Father has a plumber's license and is self-employed. Father admitted drinking during social events, but denied he has a drinking problem.

Father had not been visiting the children as the children had not yet begun counseling. During a Team Decision Meeting, Karen agreed to visit with father for the sake of Salvador, Jr., who missed his father. Father agreed to a visitation schedule.

DCFS recommended reunification services for father including parent education, random drug and alcohol testing, substance abuse assessment and treatment if necessary, and counseling to address domestic violence. DCFS recommended family maintenance services for mother, including counseling to address domestic violence.

At the September 18, 2012 hearing, the matter was continued for mediation. At the October 28, 2012 hearing, father disputed that there was evidence of substantial risk to the children that they would suffer harm as a result of domestic violence: father contended the petition was factually inaccurate because mother denied father brandished

8

a gun, Karen did not witness it, and Salvador denied it. Father argued the September 2011 incident was remote in time, and it was a verbal altercation only; further, there was no evidence of his current substance abuse. The court struck the allegations based on father's brandishing of a gun at Karen's birthday in counts a-1 and b-1, and stated, "I believe [father] is in denial. What is really interesting or sweet here is both children very much say that it's unfair that the mother is getting all of the blame because it's [d]ad. Dad beats up on Mom. Dad yells at Mom and Mom is the one doing everything. . . . [Father] appears to be in complete denial about his behavior and it's affecting his children and his wife." The court sustained all allegations of the petition except for the counts relating to abuse of Salvador, Jr. (counts a-3, b-3) and those alleging abuse of a sibling (counts j-1 and j-2). The court granted custody to mother and ordered father to do eight random or on demand alcohol and drug tests; if any test was dirty, father would be ordered to a full drug treatment program. Father was also ordered to participate in 52-week domestic violence counseling, parenting, and individual counseling.

## DISCUSSION

Father contends count b-4, alleging jurisdiction based on his history of substance abuse, including alcohol and marijuana, does not support jurisdiction because there is a difference between using a substance and having a substance abuse problem. (See *In re Drake M.* (2012) 211 Cal.App.4th 754.) Here, because father did not have a diagnosed substance abuse problem under the DSM-IV, his use of alcohol and marijuana alone was insufficient to bring him within the jurisdiction of the dependency court. Further, he argues there is no evidence he exposed the children to a serious risk of harm under subdivisions (a) and (b) based on the incidents of domestic violence, and thus we must dismiss the counts based on those incidents (counts a-1, a-2, b-1, and b-2).

### A.    Standard of Review

At the jurisdictional hearing, the dependency court's finding that a child is a person described in section 300 must be supported by a preponderance of the evidence.

9

(§ 355, subd. (a); *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248; *In re Sheila B.* (1993) 19 Cal.App.4th 187, 198.) On appeal, in reviewing a challenge to the sufficiency of the dependency court's jurisdictional findings, our power begins and ends with a determination as to whether substantial evidence exists, contradicted or uncontradicted, supporting the dependency court's determinations. We review the evidence in the light most favorable to the dependency court's findings and draw all reasonable inferences in support of those findings. (*Elijah R. v. Superior Court* (1998) 66 Cal.App.4th 965, 969; *In re Basilio T.* (1992) 4 Cal.App.4th 155, 168.) Thus, we do not consider whether there is evidence from which the dependency court could have drawn a different conclusion but whether there is substantial evidence to support the conclusion that the court did draw. (*In re Rubisela E.* (2000) 85 Cal.App.4th 177, 194–195; *In re Stephanie M.* (1994) 7 Cal.4th 295, 319.) With respect to jurisdictional findings, we note that any one of the findings upholding the allegations of the petition would be sufficient to sustain the juvenile court's assertion of dependency jurisdiction. (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1127.)

### B.    Jurisdiction under Section 300, Subdivision (a)

Under section 300, subdivision (a), the juvenile court has jurisdiction over any child if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a).) Jurisdiction is appropriate where, through exposure to a parent's domestic violence, a child suffers or is at substantial risk of suffering serious physical harm inflicted nonaccidentally by the parent. The purpose of subdivision (a) "'is to provide maximum safety and protection for children who are currently being physically . . . abused.'" Although the court may also assume jurisdiction of a child based on exposure to domestic violence under subdivision (b), subdivision (a) may also apply. (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599.)

Here, father requests that we find insufficient evidence supports the allegations under subdivision (a). However, father admitted he had a bad temper, and was physically

10

abusive to Karen and mother on more on than one occasion by hitting and pushing mother in front of the children; chasing Karen down the street and pulling her hair; hitting Karen across the face in a restaurant; and yelling at mother and told her he would hit the children whenever he wanted to. These findings support jurisdiction under subdivision (a).

Nonetheless, father argues there is insufficient evidence that he hit anyone. He notes that the petition alleges that on July 21, 2012, father struck mother and pushed her in front of the children, but that both mother and Karen denied the incident; the September 11, 2011 incident did not happen in front of the children; and the incidents Karen remembered when she was three and four years old were remote in time, as Karen was now 17. Father's argument misconstrues the substantial evidence standard of review, which posits that conflicting evidence does not mandate reversal; rather, we look to see if there is any evidence which supports the dependency court's findings. Here, the dependency court was justified in believing Karen's earlier testimony regarding the incidents, or relying on mother's restraining order declaration to conclude that father had hit Karen and mother on more than one occasion, and had threatened to do so in the future.

Further, father relies on *In re Daisy H.* (2011) 192 Cal.App.4th 713, where this court reversed jurisdictional orders under section 300, subdivision (b) based on physical abuse similar to that alleged here. The father in *Daisy H.* choked and pulled the mother's hair two to seven years before the dependency petition was filed. The children denied ever seeing domestic abuse and there was no evidence the alleged hair-pulling and choking incidents occurred in the children's presence. Further, none of the children was afraid of the father. This court found the evidence insufficient to support the finding the prior acts of domestic violence placed the children at a current substantial risk of physical harm, stating: "Physical violence between a child's parents may support the exercise of jurisdiction under section 300, subdivision (b) but only if there is evidence that the violence is ongoing and likely to continue and that it directly harmed the child physically

11

or placed the child at risk of physical harm." (*Id.* at p. 717.) This case is easily distinguished from *In re Daisy H.,* where the domestic violence incidents were old and the children denied seeing any abuse. Here, there are contemporaneous statements of both mother and Karen concerning father's physical abuse of them, and his continued verbal abuse and statements that he will hit his children whenever he likes. Such evidence adequately supports jurisdiction.

### C.     Jurisdiction Under Section 300, Subdivision (b)

Section 300, subdivision (b) provides a basis for jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse. (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) A jurisdictional finding under section 300, subdivision (b) requires "(1) neglectful conduct by the parent in one of the specified forms; (2) causation and (3) 'serious physical harm or illness' to the minor, or a 'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "Subdivision (b) means what is says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of serious physical harm or illness." (*Id*. at p. 823.)

Domestic violence supports jurisdiction under subdivision (b). "'"[D]omestic violence in the same household where the children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." [Citation.] Children can be put "in a position of physical danger from [spousal] violence" because, "for example, they could wander into the room where it was occurring and be accidentally hit by a thrown object, by a fist, arm, foot or leg . . . ." [Citation.]' [Citation.]" (*In R.C.* (2012) 210 Cal.App.4th 930, 941–942.)

Father here argues that the petition relies on the incident with the BB gun stating he put the gun to Karen's head, when the facts support at most a finding that he waved a

BB gun around on Karen's birthday.[2]  Father further argues there is no evidence in the record the children witnessed the September 11, 2011 incident where father attacked mother when she asked about the time father hit Karen in the restaurant; with respect to the remaining evidence, it shows that when father ran after Karen in the street he was reasonably trying to discipline Karen, Karen has stated she is not afraid of father, and Karen has not been harmed by father.

We disagree with father's analysis.  The same conduct that supported jurisdiction under subdivision (a) supports jurisdiction under subdivision (b):  Father admitted he had a bad temper, and was physically abusive to Karen and mother on more than one occasion by hitting and pushing mother in front of the children; chasing Karen down the street and pulling her hair; hitting Karen across the face in a restaurant; and yelling at mother and told her he would hit the children whenever he wanted to.  These findings support jurisdiction under subdivision (b).

**D.     Use of Marijuana as Basis for Jurisdiction**

In *In re Drake M.*, *supra*, 211 Cal.App.4th 754, upon which father relies, the dependency court found jurisdiction over a child whose father smoked legal marijuana. *Drake M.* considered the issue of whether habitually smoking legal marijuana constituted conduct that rendered a father incapable of providing regular care and supervision to a child, and found that such conduct could fall within the purview of section 300, subdivision (b), if a child has suffered or was at substantial risk for suffering serious physical harm or illness as a result of:  (1) a parent's inability to provide regular care due to substance abuse or (2) the parent's failure to adequately supervise or protect the child. (*Id.* at p. 763.)  The *Drake M.* court held that a finding of substance abuse must be based on "evidence sufficient to (1) show that the parent or guardian at issue had been diagnosed as having a current substance abuse problem by a medical professional or (2) establish that the parent or guardian at issue has a current substance abuse problem as

---

[2] The dependency court struck the allegation regarding the BB gun.

defined in the [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders]." (*Id*. at p. 766.)

*Drake M*. determined that DCFS had failed to prove the father was a substance abuser in the absence of evidence from a medical professional because there was no evidence that the father suffered from any recurrent substance abuse problems. (*Drake M.*, *supra*, 211 Cal.App.4th at pp. 767–768.) The father had a legal, medical recommendation to use marijuana for recurring knee pain and could adequately care for the child. (*Ibid*.) The child had food, water, and shelter; there was no evidence of abuse in the home; and no evidence showed that the child was not supervised. (*Id*. at pp. 768–769.)

Father argues that we must dismiss count b-4 because he has none of the criteria set forth in the DSM-IV for substance abuse: He does not have a diagnosed substance abuse problem; nor does he have indicia of a substance abuse problem, including: "'(1) recurrent substance abuse resulting in a failure to fulfill major role obligations at work school or home (e. g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[,] . . . (2) recurrent substance abuse in situations in which it is physically hazardous (e. g., driving an automobile or operating a machine when impaired by substance use)[,] . . . (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[,] and . . . (4) continued substance use despite having or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e. g., arguments with spouse about consequences of intoxication, physical fights.'" (*In re Drake M.*, *supra*, 211 Cal.App.4th at p. 766.) Father places special emphasis on the fact that he and mother do not have arguments about his substance use, and contends as a result, the evidence shows he does not have a substance abuse problem.

Here, although father was frequently drunk, was observed on several occasions using marijuana for which he did not have a prescription, and displayed signs of

14

intoxication to mother, Karen, and the social worker, there was no evidence that father was unable to properly supervise the children based upon his marijuana use. As a result, the section 300, subdivision (b) jurisdictional finding of count b-4 is not supported on this basis. (*In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003 [marijuana use, without more, insufficient to support dependency jurisdiction].) However, because there is another basis for jurisdiction under subdivision (b) in father's physical abuse of the children, we do not reverse.

### E.    Disposition Order

Section 361, subdivision (c)(1), provides children shall not be removed from the home in which they are residing at the time of the petition unless there is clear and convincing evidence of a substantial danger to the children's physical health, safety, protection, or physical or emotional well-being and there are no reasonable means by which the children can be protected without removal. (*In re Jasmine G.* (2000) 82 Cal.App.4th 282, 288.) "After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing" and "decide where the child will live while under the court's supervision." *(In re N.M.* (2011) 197 Cal.App.4th 159, 169.) "A removal order is proper if based on proof of parental inability to provide proper care for the child and proof of a potential detriment to the child if he or she remains with the parent. [Citation.] 'The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus of the statute is on averting harm to the child.' [Citation.] The court may consider a parent's past conduct as well as present circumstances. [Citation.]" (*Id*. at pp. 169–170.) If the court finds by clear and convincing evidence that the child's welfare requires removal due to a substantial danger, or risk of danger, to the child's physical health if he or she is returned home, and there are no reasonable alternatives to protect the child, the court may issue a removal order. (§ 361, subd. (c)(1).) "Whether the conditions in the home present a risk of harm to the child is a factual issue. Again, we apply the substantial evidence test." (*In re N.M.*, at p. 170.)

Here, substantial evidence supports the removal of Karen and Salvador, Jr. from father's home. Father's pattern of angry outbursts and physical abuse continues unabated, and poses a severe risk of mental, physical, and emotional harm to the children. Father is, as the dependency court stated, in denial about the severity of his problems, including both his drug use and his verbal and physical assaults against his family.

## DISPOSITION

The order is affirmed as modified to strike allegations based on father's marijuana use.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


ROTHSCHILD, Acting P. J.


CHANEY, J.